# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| JONES EXPRESS, INC., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:10-cv-140 |
| | ) | |
| ERNEST WATSON, | ) | Judge Thomas A. Wiseman, Jr. |
| | ) | |
| **Defendant.** | ) | |

### *AMENDED* MEMORANDUM OPINION

Plaintiff Jones Express, Inc. ("Jones Express") filed this diversity action against defendant Ernest Watson, an individual, alleging that Watson breached the terms of a contract between them and, alternatively, that he breached a common-law duty of indemnity. Now before the Court is Jones Express's motion for partial summary judgment, in which Jones Express seeks judgment in its favor on the issue of liability on the basis of both contractual and common-law indemnity. For the reasons set forth herein, the motion will be granted.

## I.   FACTUAL BACKGROUND

On January 30, 2007, defendant Ernest Watson, as Lessor, entered into a Long Term Equipment Lease ("Lease") with plaintiff Jones Express as Lessee. Watson admits he signed the Lease, but claims that the equipment identified in the Lease, a Volvo truck tractor, serial number 4V4NC9RH61N306252, is not owned by Watson himself but is instead titled to Nestledown Farms, Inc., an administratively dissolved Tennessee corporation of which Watson was the principal shareholder and owner, as well as the registered agent. Jones Express had previously entered into a long-term equipment lease with Nestledown Farms, Inc. in July 2003 and had, pursuant to that lease, paid Nestledown Farms in accordance with the lease terms. Watson claims that he signed the Lease in his individual capacity as a result of inadvertence and mistake and that he intended to sign in his capacity as agent for Nestledown Farms. However, the evidence also indicates that Nestledown Farms was administratively dissolved in August 2006, several months prior to Watson's execution of the Lease at issue in this case. In addition, Jones Express made the payments under the Lease to Ernest Watson individually. Watson claims he is

attempting to administratively reinstate the corporate charter of Nestledown Farms, but the fact remains that the company is, and was at the time of execution of the Lease, technically not in existence.

Pursuant to the Lease terms, Watson agreed to be bound by the provisions of the Interstate Commerce Commission rules and regulations applicable to the operation of vehicles as contemplated by the Lease, and that he also agreed to "indemnify and save [Jones Express] harmless from any and all cost, expenses or loss caused [Jones Express] by [Watson], his agents, servants, employees, or leased drivers." (Lease (Doc. No. 1-1) § 9.) Jones Express alleges that, pursuant to the Lease, it furnished the vehicle described in the Lease to Watson, who in April 2008, dispatched a driver and the vehicle to Georgia.[1] On April 15, 2008, the driver, in the course and scope of the performance of his duties as Watson's employee, was involved in an accident (the "Accident") that resulted in one fatality. It appears to be undisputed that the actions of the driver "caused" Jones Express to be "involved" in litigation that arose concerning the Accident. (Def.'s Resp. to Pl.'s Statement of Undisp. Facts (Doc. No. 33) ¶¶ 4, 5.[2]) Jones Express further alleges that in connection with the "resolution of the litigation" Jones Express paid damages and incurred substantial expenses, including attorneys' fees and litigation costs. (Pl.'s Statement of Undisp. Facts (Doc. No. 21) ¶¶ 6, 7.) The settlement agreement, if in fact there was one, is not in the record, however. In addition, there are no allegations in the complaint or in the evidentiary record that the driver, Watson's employee, actually caused the accident, only that his actions caused Jones Express to become involved in the litigation. Watson avers that he has not been able to obtain discovery regarding the litigation or its settlement, or the expenses Jones Express might have incurred in association therewith.

In any event, Jones Express states two causes of action against Watson in its Complaint: one for breach of contract, specifically for breach of the indemnity clause in the Lease; and a second for breach of the common-law duty of indemnity. Jones Express has now moved for partial summary judgment on

---

[1] Watson denies this allegation insofar as he claims Nestledown Farms dispatched the driver. As discussed below, because the corporation was administratively dissolved at the time the Lease was executed and Watson signed the Lease in his individual capacity, the Court finds that Watson's denial of this fact does not give rise to a material issue of disputed fact.

[2] Watson denies these allegations but again only on the basis of his claim that the driver was hired to drive for Nestledown Farms, Inc. rather than for Watson individually, a claim which is not supported by the factual record.

the issues of (1) whether Watson has a contractual obligation to indemnify it for all amounts paid in the settlement of the litigation arising out of the Accident along with all fees, expenses, costs and attorneys' fees associated with the litigation, and (2) whether Watson has a common-law duty to indemnify and reimburse Jones Express for all fees, expenses, costs, and attorneys' fees associated with the litigation arising out of the Accident.

Watson denies liability under either theory. In support of his position, Watson argues first that the Lease provision in which Jones Express represents that it maintained public liability insurance and was insured for the type of loss giving rise to this litigation is in conflict with the indemnity clause, and that these two Lease provisions "present an ambiguity which cannot be resolved on summary judgment." (Def.'s Resp. Opp. Summ. J. (Doc. No. 32) at 1.) He contends another ambiguity arises as a result of the Lease provision which seems to limit Watson's personal liability to "the first five hundred ($500.00) dollars relating to any type of liability claim caused by the fault or negligence of the OWNER and/or driver or helper." (Lease § 4.) Second, Watson asserts that the indemnification provision in the Lease violates federal regulations governing the lease of motor vehicles by the owners thereof to motor carriers with federal motor carrier authority, pursuant to which the indemnification provision is unenforceable. (*Id.* (citing 49 C.F.R. § 376.101 *et seq.*).) Third, Watson asserts that he is not the owner of the vehicle involved in the Accident, as a result of which the Lease violates 49 C.F.R. § 376.12(a), which requires that a lease of this type be signed by both an authorized motor carrier and the "owner" of the leased equipment, as owner is defined in 49 C.F.R. § 376.2(d) Alternatively, Watson requests that he be permitted to discover the terms of the settlement underlying the litigation, as well as "prior equipment leases between Jones Express and Nestledown Farms, Inc." and "the circumstances leading up to the execution of the Lease." (Doc. No. 32, at 2.)

## II. LEGAL ANALYSIS

### A. Standard of Review

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The judge is not to weigh the evidence and determine the truth of the matter, but rather

determine whether there is a genuine issue for trial." *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council*, 532 F.3d 405, 411–12 (6th Cir. 2008) (quoting *Sterling China Co. v. Glass, Molders, Pottery, Plastics and Allied Workers Local No. 24*, 357 F.3d 546, 551 (6th Cir. 2004)).

> **B.     Watson May Be Held Personally Liable Despite Purported Unilateral "Mistake."**

As an initial matter, the Court notes that the Lease itself provides that it is to be construed in accordance with Pennsylvania law.  (Lease § 13.)  Under Pennsylvania law, it is well settled that a lease agreement is a contract; its interpretation is therefore controlled by principles of contract law.  *Amoco Oil Co. v. Snyder*, 478 A.2d 795, 798 (Pa. 1984).  When a reviewing court is asked to interpret or review the meaning of a contract, the intent of the parties is paramount, and the court's objective is simply to ascertain the parties' intent as it is manifestly expressed in the agreement itself.  *Cusamano v. Anthony M. DiLucia, Inc.*, 421 A.2d 1120, 1122 (Pa. Super. Ct. 1980); *Daniels v. Bethlehem Mines Corp.*, 137 A.2d 304, 308 (Pa. 1958).  The intent of the parties to a written contract is regarded as embodied in the writing itself.  *Marcinak v. Se. Greene Sch. Dist.*, 544 A.2d 1025, 1027 (Pa. Super. Ct. 1988).  When the words of a contract are unequivocal, they speak for themselves, and a meaning other than that expressed cannot be given to them.  *Id.*

In the present case, the Lease terms naming the parties who are bound by the Lease are clear: Ernest Watson as "Owner" and Lessor agreed to lease to Jones Express, Inc. the Volvo truck tractor that was involved in the Accident.  Watson's initials ("EW") are written at the bottom of each page of the Lease.  At the end of the lease is a line where the "Owner's" name is to be "[n]eatly [p]rint[ed]."  (Lease at page 3.)  The printed name "Ernest Watson" appears on that line.  Below that is the signature line for the person signing on behalf of the Owner.  Below that line appear the words:  "(Signature of Owner or Owner's Agent – can be driver)."  Ernest Watson signed his name on this line.  The Lease does not anywhere mention Nestledown Farms, Inc.  The Lease unequivocally reflects the parties' intent that Ernest Watson enter into it in his personal and individual capacity and not as the agent of a business entity.

Watson nonetheless alleges that the Lease should have been between Nestledown Farms and Jones Express but for "inadvertence and a mistake" on his part.  (Watson Decl. (Doc. No. 34) ¶ 6.) Notwithstanding, another well settled general rule of contracts under Pennsylvania law is that "if a mistake

is not mutual, but unilateral, and is not due to the fault of the one not mistaken, there is no basis for relief." *Warren v. Greenfield*, 595 A.2d 1308, 1312 (Pa. Super. Ct. 1991) (citing *McFadden v. Am. Oil Co.*, 257 A.2d 283 (Pa. Super. Ct. 1969) (emphasis in original)).  The purported mistake in this case is not alleged to be bilateral, and the fact that Jones Express's payments under the Lease were made to Ernest Watson in his individual capacity eliminates any possible inference that Jones Express knew or intended to contract with Nestledown Farms rather than with Watson.  Moreover, the fact that Nestledown Farms was administratively dissolved at the time the parties executed the Lease also belies Watson's allegation that there was a mistake at all, particularly given that Watson is or was the registered agent for the corporation and the party responsible for dissolving the corporation.

Regardless, Pennsylvania law is also clear that if a contract is entered into in the name of a corporate agent, with the name of the corporation also being disclosed on the agreement, then there is a strong presumption that the intent of the contracting parties is that the principal should be the party to the contract, and not the agent.  *In re Rothman*, 204 B.R. 143, 150 (Bkrtcy. E.D. Pa. 1996) (citing *Viso v. Werner*, 47, 369 A.2d 1185, 1187 (Pa. 1977); *Bucks v. Buckwalter*, 215 A.2d 625, 627 (Pa. 1966)).  Conversely, it seems logical to presume that when the name of the corporation is nowhere disclosed on the contract, the opposite presumption arises:  that there was no intention on the part of the parties that the unnamed corporation, rather than the individual who signed the contract, should be obligated.

In sum, the contract does not purport to be in the name of Watson's administratively dissolved corporation.  Watson clearly and unambiguously signed it in his individual capacity, and there is no evidence of the type of mistake that would allow him to avoid individual liability.  The Court therefore rejects Watson's contention that he cannot be held individually liable on the Lease.

Watson's claim that the Volvo tractor is actually titled to Nestledown Farms, Inc. and that, because he personally does not own the equipment at issue he did not have the power to lease it to Jones Express, is also unavailing.  Although the applicable regulation does require that an equipment lease such as the one at issue be made between an authorized carrier (such as Jones Express) and the "owner" of the equipment, 49 C.F.R. § 376.12(a), title ownership is not dispositive.  The regulations define the term "owner" as:  "A person (1) to whom title to equipment has been issued, or (2) who, *without title, has the right to exclusive use of equipment*, or (3) who has lawful possession of equipment registered and

licensed in any State in the name of that person."  49 C.F.R. § 376.2(d) (emphasis added).  There is no dispute that Watson had the right to exclusive use of the equipment at the time he executed the Lease. The fact that the Volvo tractor is titled to Watson's administratively dissolved corporation is not dispositive of Watson's individual liability.

### C.  Jones Express's Insurance Coverage Does Not Affect Watson's Indemnification Obligation.

Watson's first substantive argument in support of his claim that he cannot be liable for indemnifying Jones Express is that the Lease itself required Jones Express to maintain liability insurance, as a result of which "Jones Express cannot now claim that it paid for the settlement and attorney's fees incurred as a result of the [Accident]."  (Def.'s Resp. Opp. Summ. J., Doc. No. 32, at 3.)  In fact, according to Watson, Jones Express's representation in the Lease was to the contrary.  That is, because "Jones Express was insured . . . [i]t cannot now be heard to say that it can recover indemnification from Watson for its alleged losses."  (*Id.*)

This argument is unavailing.  Whether Jones Express had insurance coverage has no bearing on the enforceability of the contractual indemnification obligation.  The only question potentially raised by this argument is whether Jones Express is insured by a third party who paid the entire loss, in which case the insurer as subrogee is the real party at interest who should have brought suit in its own name.  At this point in the proceedings, however, there is no evidence in the record regarding whether Jones Express paid all or part of the loss itself or whether Jones Express is self-insured, in either of which case it would remain a real party in interest with the ability to sue in its own name.  *See In re Chi-Chi's, Inc.*, 338 B.R. 618, 623 (D. Del. 2006) ("[W]here there is partial subrogation, both the insured and the insurer are real parties in interest.").  *Cf. United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 380–81 (1949) (if a subrogee has paid an entire loss suffered by an insured, it is the only real party in interest and the only party that may sue in its own name); *Va. Elec. & Power Co. v. Westinghouse Elec. Corp.*, 485 F.2d 78, 83, 84 (4th Cir. 1973) (where an insurer-subrogee has paid an entire loss suffered by the insured, it is the only real party in interest and must sue in its own name).  Regardless, whether the insurer-subrogee should be named as a party in this case is not germane to the question of whether the defendant is liable; it concerns the naming of the appropriate plaintiff to which or to whom the defendant may be required to pay damages.  *See Reid v. Bootheel Transp. Co.*, 771 F. Supp. 237, 240 (N.D. Ill. 1991) (in a factually

similar indemnity case in the trucking-industry context, holding under Illinois law that that an indemnitee's subrogee has the right to recover the amount the subrogee has paid on behalf of the indemnitee); *Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc.*, 916 A.2d 686, 693 (Pa. Super. Ct. 2007) (noting that under Pennsylvania law "a subrogee stands in the shoes of the subrogor" and can recover damages when the subrogor has a legally cognizable cause of action against a third party).

  **D.**  **The Indemnification Provision Does Not Violate Federal Law.**

  Watson argues next that the indemnification provision of the Lease violates 49 C.F.R. Pt. 376, the "Truth-in-Leasing" regulations that govern the motor-carrier industry and lease agreements like the one executed by the parties here. Before discussing Watson's arguments, it may be helpful to outline the statutory and regulatory framework governing the relationship between truck "owner-operators" such as Watson and common carriers like Jones Express.

  Owner-operators are small business men and women who own or control truck tractors used to transport property on the country's highways. Owner-operators either transport commodities exempt from Department of Transportation ("DOT") regulations or, as independent contractors, lease or provide their equipment and services to motor carriers who possess the legal operating authority under DOT regulations to enter into contracts with shippers to transport property. The relationship between independent truck owner-operators and regulated carriers must be set forth in a written agreement between the parties and is regulated by the DOT.[3] *See* 49 U.S.C. § 14102 (authorizing the secretary to promulgate regulations governing the leasing of transport vehicles by motor carriers); 49 C.F.R. pt. 376.

  It is true, as Watson argues, that under federal law, motor carriers are required to register with the Department of Transportation ("DOT") in order to ship most types of cargo. 49 U.S.C. §§ 13901, 13902. Once registered, common carriers are legally obligated to comply with certain DOT regulations. 49 U.S.C. § 13902(a)(1); 49 C.F.R. § 367.1. "A primary goal of this regulatory scheme is to prevent large carriers from taking advantage of individual owner-operators due to their weak bargaining position." *Owner-Operator Indep. Drivers Ass'n v. Swift Transp. Co.*, 367 F.3d 1108, 1109 (9th Cir. 2004). The

---

[3] In 1995, the Interstate Commerce Commission ("ICC") transferred the regulation of motor carrier functions to the DOT and to the Surface Transportation Board ("STB"). *See* 49 U.S.C. § 13501. The Federal Highway Administration ("FHWA") is within the DOT and administers and enforces regulations concerning lease agreements between motor carriers and owner-operators.

Eighth Circuit elaborated:

> A review of the development in the Truth in Leasing regulations indicates that they were intended to remedy disparities in bargaining positions between independent owner operators and motor carriers. The regulations were originally developed by the Interstate Commerce Commission (ICC), and the ICC's notice of proposed rulemaking noted "the Commission's deep concern for the problems faced by the owner-operator in making a decent living in his chosen profession." In its notice of proposed final rules, the ICC said that some of its rulemaking objectives were "to eliminate or reduce opportunities for skimming and other illegal or inequitable practices; and to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry."

*Owner-Operator Indep. Drivers Ass'n v. New Prime, Inc.*, 398 F.3d 1067, 1070 (8th Cir. 2003) (citations omitted). Thus, for example, the statute authorizes the DOT to require that all leases between motor carriers and owner-operators be in writing and contain certain basic information, such as the duration of the lease and the compensation to be paid the owner-operator. 49 U.S.C. § 14102(a); *see* 49 C.F.R. § 376.11(a) (requiring that leases be in writing); *id.* § 376.12(b) (requiring that leases "specify the time and date . . . on which the lease begins and ends"); *id.* § 376.12(d) (requiring that the amount to be paid to the owner-operator be "clearly stated on the face of the lease").

In this case, Watson entered into a Lease agreement with Jones Express pursuant to which Jones Express leased Watson's tractor with a driver employed by Watson. One of the provisions of the Lease, referenced above, required Jones Express to maintain liability coverage, with itself as the named insured, for the protection of the public:

> *COMPANY will maintain public liability, property damage and cargo insurance, for the protection of the public naming COMPANY as the insured for the vehicles while operating from and to points specified by COMPANY. . . .*

(Lease § 8.) The Lease further specified that "[a]ll other insurance covering the vehicle or vehicles furnished during the time it or they are operating under this LEASE, if any," including, for example, bobtail insurance,[4] "shall be obtained at OWNER'S expense." (*Id.*)

These Lease clauses are in compliance with the regulations requiring motor carriers to maintain insurance coverage "for the protection of the public":

> The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public. . . . The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance.

---

[4] Operating the tractor without a trailer in tow is commonly known in trucking parlance as "bobtailing." Bobtail insurance typically covers accidents that occur while the tractor is not hauling freight.

49 C.F.R. § 376.12(j)(1).  In addition, however, the regulations require that truck leases must "provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease.  The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease."  *Id.* § 376.12(c)(1).  In compliance with this provision, the Lease states:

> **Responsibility**.  While transporting freight in the service of the COMPANY [Jones Express] under the company's Interstate Commerce Commission Operating Authority, the COMPANY assumes responsibility for the equipment leased for the period of the LEASE to the extent required by and in accordance with the provisions of all applicable Interstate Commerce Commission rules and regulations.

(Lease § 1.)

Watson argues that the regulatory scheme anticipates that the owner-operator "traditionally does not have the insurance required by federal law, cannot obtain its federal authority, and is left to lease his equipment to an authorized carrier who *has* the required insurance."  Doc. No. 32, at 7–8.)  He argues that "[t]o require an owner-operator like Ernest Watson to indemnify Jones Express here constitutes an unlawful and hidden insurance obligation that violates the letter and the spirit of the Truth-In-Leasing regulations," and that "[t]o allow Jones Express to pass liability for this loss on to Watson defeats the very purpose of the federal regulations."  (Doc. No. 32, at 8.)

As an initial matter, the Court notes that Watson's argument that the indemnity provision constitutes an "unlawful and hidden insurance obligation" borders on the disingenuous.  The indemnification provision is not buried in the agreement, nor is it worded in such a way as to be confusing.  Moreover, the Lease also expressly required Watson to carry liability insurance as well.  (*See* Lease § 4 (requiring the Owner, Watson, to "pay all costs of operation in addition to the above including but not limited to . . . insurance coverage for collision, fire, theft or other occurrence or catastrophe").[5]

In addition, courts that have considered the public-policy aspect of Watson's argument, including

---

[5]  Watson asserts in his response in opposition to summary judgment that "[u]nder standard insurance policies, owner-operators cannot obtain public liability insurance and are limited to bobtail insurance policies."  (Doc. No. 32, at 7.)  The factual record does not support this assertion.  Rather, Watson alleges in his declaration that his "company cannot afford the public liability insurance."  (Watson Decl. ¶ 7.)  The Lease nonetheless required Watson to obtain collision insurance coverage on the Volvo truck.  It appears Watson did carry bobtail insurance, as required by the Lease, but that Jones Express actually obtained bobtail insurance on behalf of Watson for which Watson then reimbursed it.  There is no indication in the factual record that the Accident occurred during a period when the truck was "bobtailing."

the Supreme Court, have generally rejected it. In *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 40 (1975), a lessee motor carrier sought to recover against a lessor pursuant to a truck-leasing agreement which provided that the lessor would indemnify the lessee for loss caused by the negligence of the lessor. The Supreme Court expressly held that the indemnification provision at issue was enforceable, specifically because it did not violate the ICC regulation providing that any lease of trucking equipment shall place control and responsibility for the operation of the equipment in the lessee, nor did the indemnification agreement conflict with ICC safety regulations. In that case Transamerican Freight Lines as lessee entered into a lease agreement with Brada Miller Freight Systems as lessor. Brada Miller also provided a driver as its employee. The lease provided that Transamerica would maintain control and responsibility for the leased equipment "in respect to the public." *Id.* at 31. It also provided that Brada Miller would indemnify and hold harmless Transamerican for any claims and injuries sustained or alleged to have been sustained by reason of the negligence or alleged negligence on the part of Brada Miller or its agents or employees. While this lease was in effect, the leased vehicle, driven by a Brada Miller employee, was in an accident in which a third party was injured. The third party sued both Transamerican and Brada Miller alleging driver negligence. The driver settled with Transamerican who then sought indemnification from Brada Miller pursuant to the lease. Brada Miller sought summary judgment on the grounds that the indemnification provision was contrary to public policy and therefore unenforceable, as it contravened the regulatory and contractual requirement that Transamerican maintain responsibility and control of the leased equipment at all times. The district court and the Seventh Circuit agreed with Brada Miller, the latter holding that the intent of the regulations "was to make sure that licensed carriers would be responsible in fact, as well as in law, for the maintenance of leased equipment and the supervision of borrowed drivers." *Id.* at 34. The Supreme Court reversed, holding that the indemnification clause "did not affect [the] basic responsibility of the lessee to the public; it affected only the relationship between the lessee and the lessor." *Id.* at 39. The Court noted that, while the lessor's furnishing of the driver "allows an aspect of control, in a sense, to remain in the lessor," this type of control was merely "ministerial control," rather than "operating authority." *Id.* The Court further observed that the regulations "do not expressly prohibit an indemnification agreement between the lessor and the lessee. In fact, they neither sanction nor forbid it." *Id.* at 39–40. Consequently, the Court

concluded that a lease clause requiring the lessee to "bear the burden of its own negligence does not, in and of itself, offend the regulations so long as the lessee does not absolve itself from the duties to the public and to the shippers imposed upon it by the Commission's regulations." *Id.* at 40.

Although the Court did not expressly consider whether an indemnification clause conflicts with the regulatory requirement that motor carrier-lessees in these types of leases carry insurance "for the protection of the public," its holding strongly suggests that they do not, and other courts have reached that conclusion. In *Reid v. Bootheel Transportation Co.*, 771 F. Supp. 237 (N.D. Ill. 1991), for example, a motorist brought suit against the lessor and lessee of a tractor trailer for damages resulting from injuries incurred in a collision. At the time of the accident, the tractor trailer and its driver were driving solely in the interest of the lessee. The lessee settled with the motorist and brought suit against the lessor for indemnity. The court entered judgment for the lessee, holding that the indemnity provision in the lease agreement did not conflict with the requirement in the lease that the lessee carry liability insurance and that it maintain full common-carrier responsibility for the leased tractor trailer, and that the indemnity provision in the lease was therefore enforceable. *Cf. Nowak v. Transport Indem. Co.*, 358 N.W.2d 294 (Wis. Ct. App.1984) (where ICC requirements for insurance have been met, and public is protected by the existence of adequate funding, parties and their insurers are free to allocate ultimate responsibility among themselves).

Watson here argues that both *Reid* and *Transamerican* are distinguishable on the facts from the case at bar because in those cases, both parties were certified carriers licensed by the Interstate Commerce Commission (instead of a certified carrier and an owner-operator), and they were operating under a short-term Trip Lease agreement. Further, it was clear in *Reid* at least that both parties were covered by insurance for the insured's legal liability for damages because of bodily injury or property damage. This Court is not persuaded by these distinctions. Rather, the Court finds that the holdings in *Transamerican* and *Reid* apply with equal force to the facts at issue here. Thus, the question is not whether the applicable regulations permit the parties to allocate responsibility for losses incurred by Jones Express that were caused by Watson or his employee; they clearly do. The question is whether the parties in this particular case effected such an allocation in their Lease agreement. *Cf. Dietrich v. Albertsons Inc.*, 57 F.3d 1080 (Table), 1995 WL 355246, at *5 (10th Cir. June 14, 1995) ("Federal

regulations . . . are indifferent as to how the lessor and lessee may contractually apportion liability. . . . The question before us, therefore, is not whether Coast [lessor] could have contractually agreed to indemnify Mayflower [lessee]. Clearly, under federal law such a contractual arrangement is permitted. Rather, our inquiry is whether, under Indiana law, Coast in fact agreed to hold harmless and indemnify Mayflower for damages arising out of this accident." (Footnote and citations omitted.)).

### E.    Interpretation of the Lease Indemnification Provision

The indemnification provision in the Lease appears just below the section concerning Jones Express's obligation to maintain liability insurance for the protection of the public. It states in pertinent part: "**Indemnification.**  *In addition to any other indemnification agreements set forth herein, OWNER hereby agrees to indemnify and save COMPANY harmless from any and all cost, expense or loss caused COMPANY by OWNER, his agents, servants, employees, or leased drivers.*" (Lease § 9.)  In addition, as set forth above, the Lease also required Watson, as owner, to maintain liability insurance. (Lease § 4.) More problematically, however, the same Lease section requiring Watson to maintain insurance coverage also appears to limit Watson's liability arising from owner or driver negligence:

> **Payment of Expenses**. . . .  Further, OWNER [defendant/lessor] shall pay all costs of operation in addition to the above including but not limited to repairs . . . ; damages to the equipment; payment for injury or damages to the operator, driver and/or helper, insurance coverage for collision, fire, theft, or other occurrence or catastrophe; . . . the first five hundred ($500.00) dollars of damage to or loss of cargo or the first five hundred ($500.00) dollars relating to any type of liability claim caused by the fault or negligence of the OWNER and/or driver or helper.

(Lease § 4.)  On the basis of this section of the Lease Watson argues that, in the event the Court finds that the indemnity provision does not violate public policy, his liability to Jones Express should be limited to $500.00.

It is a "firmly settled" point of Pennsylvania contract law that "the intent of the parties to a written contract is contained in the writing itself."  *Krizovensky v. Krizovensky*, 624 A.2d 638, 642 (Pa. Super. Ct. 1993) (citing *Steuart v. McChesney*, 444 A.2d 659 (Pa. 1982)).  "'Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence,'" and, instead, the meaning of a clear and unequivocal written contract "'must be determined by its contents alone.'"  *Steuart*, 444 A.2d at 661 (quoting *E. Crossroads Ctr., Inc. v. Mellon-Stuart Co.*, 205 A.2d 865, 866 (Pa. 1965)).  "[W]here language is clear and unambiguous, the focus of interpretation is upon the terms of the agreement as manifestly

expressed, rather than as, perhaps, silently intended." *Id.* "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Krizovensky*, 624 A.2d at 642.

Courts may look outside the "four corners" of a contract only if the contract's terms are unclear: "Where the contract terms are ambiguous and susceptible of more than one reasonable interpretation, . . . the court is free to receive extrinsic evidence, *i.e.*, parol evidence, to resolve the ambiguity." *Id.* But because Pennsylvania presumes that the writing conveys the parties' intent, a contract

> will be found ambiguous if, and only if, it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning. A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction.

*Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (quoting *Samuel Rappaport Family P'ship v. Meridian Bank*, 657 A.2d 17, 21–22 (Pa. Super. Ct. 1993)) (internal quotation marks omitted). To determine whether ambiguity exists in a contract, the court may consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1011 (3d Cir. 1980).

The Court does not find the language of the contract here to be reasonably susceptible of different constructions or capable of being understood in more than one sense. The language of Section 4 unambiguously required Watson to cover the costs associated with damages to the tractor and injuries to the driver, and required him to carry insurance coverage for collision "or other occurrence or catastrophe." (Lease § 4.) The same clause also required Watson to pay "the first five hundred ($500.00) dollars relating to any type of liability claim caused by the fault or negligence of the OWNER and/or driver or helper." (*Id.*) This clause unambiguously obligated Watson to cover the first five hundred dollars of any claim for damages brought by a third party as a result of driver negligence.

However, the indemnification clause, Section 9 of the Lease, states that it is "in addition to any other indemnification agreements" in the Lease, and expressly required Watson to indemnify Jones Express from "any and all" costs or expenses" caused by Watson or his driver. (Lease § 9.) In reading

the Lease agreement as an integrated whole, as it must, the Court finds that this extremely broad indemnification provision was expressly intended to supersede any other indemnification provisions in the Lease. Because it is "in addition to" any other indemnification provisions in the Lease, including that contained in § 4, it cannot reasonably be construed to limit Watson's indemnification obligation to $500. Rather, it unambiguously required Watson to to reimburse Jones Express for any expenses Jones Express incurred that were "caused" by Watson or his drivers.

Watson does not dispute the allegation that the losses to Jones Express were caused by Watson's driver. The Court has held that the indemnification clause is enforceable regardless of whether Jones Express was insured for the damages in question; that the indemnity clause does not violate federal law; that the Lease is not ambiguous; and that Watson may be held personally liable for breach of the Lease. Accordingly, it is clear that Watson is liable to Jones Express based on the indemnification agreement contained in Section 9 of the Lease. Jones Express is entitled to summary judgment in its favor as to that issue.

The Court observes, however, that in order for Jones Express to prove the amount of damages it is entitled to recover by operation of the indemnification agreement, it will be required, under Pennsylvania law, to establish the reasonableness of the settlement in the underlying suit as well as the reasonableness of the associated fees and expenses. *McClure v. Deerland Corp.*, 585 A.2d 19, 23 (Pa. Super. Ct. 1991) (citing *Martinique Shoes, Inc. v. N.Y. Progressive Wood Heel Co.*, 217 A.2d 781 (Pa. Super. Ct. 1966)). None of that evidence is in the Court's record, and the defendant is entitled to obtain discovery on these issues if he has not already done so.

### G.  Jones Express Is Not Entitled to Summary Judgment on the Common-Law Claim.

Under Pennsylvania law,[6] common-law indemnity is an equitable remedy that "enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." *Waynesboro Country Club of Chester Cnty. v. Diedrich Niles Bolton Architects, Inc.*, No. 07-155,

---

[6] The parties have not addressed the issue of which state's law should apply, and there is no evidence in the record to guide this Court's resolution of that question. The Court presumes without deciding that Pennsylvania law applies simply because Pennsylvania law governs construction of the Lease.

2008 WL 687485 (E.D. Pa. March 11, 2008) (quoting *Builders Supply Co. v. McCabe*, 77 A.2d 368 (Pa. 1951)).  In the present case, as noted above, there is no evidence in the record at all regarding the substance or settlement of the underlying claim, and this Court cannot determine as a matter of law that common-law indemnity is warranted.

More importantly, regardless of which state's law applies, a plaintiff is generally not entitled to equitable relief when its relationship with the defendant is governed by the terms of a negotiated contract. *See, e.g., McClure*, 585 A.2d at 23 ("Under Pennsylvania law, a claim for recovery under an indemnification agreement is an action for breach of contract over which equity lacks jurisdiction."); *Allegheny Plastics, Inc. v. Stuyvesant Ins. Co.*, 200 A.2d 775, 776 (Pa. 1964) (holding that where a party has an adequate remedy at law for breach of contract, the case is not a "proper one for equitable relief"); *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) ("[W]here the remedies available to a litigant are circumscribed by the boundaries drawn at law, such as in a breach of contract case, principles of equity cannot create rights outside those boundaries."  (Citations omitted.)).  Because the parties' relationship is governed by the terms of a contract covering the issue of indemnity, Jones Express is not entitled to recover on the basis of common-law indemnity.

## III.   CONCLUSION

For the reasons set forth herein, plaintiff Jones Express's motion for summary judgment on the issue of liability based on contractual indemnification will be granted.  An appropriate Order will enter.

Thomas A. Wiseman, Jr.
Senior U.S. District Judge